IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| **DEBORAH SUZZANE CAULDER,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 7:22-cv-00127-O-BP |
| § | |
| **COMMISSIONER OF SOCIAL** § | |
| **SECURITY,** § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Deborah Caulder ("Caulder") applied for Title II Widow's Insurance Benefits ("WIB") and Title XVI Supplemental Security Income benefits ("SSI") under the Social Security Act ("SSA"). The Commissioner denied her application, deciding that she was not disabled. Caulder appealed. Because substantial evidence supports the decision, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision and **DISMISS** this case with prejudice.

**I.     BACKGROUND**

Caulder seeks widow and disability benefits under Title II and Title XVI of the SSA, claiming disability status since January 18, 2019. Soc. Sec. Admin. R. [hereinafter "Tr."], ECF No. 8-1 at 28. Caulder claims that she suffers from human immunodeficiency virus ("HIV"), chronic bronchitis, neurocognitive disorder, asthma, multiple sclerosis, gout, hepatitis C, emphysema, and high blood pressure. Tr. 30, 113, 128. The Commissioner denied her application initially and upon reconsideration. *Id.* at 1, 163.

Caulder challenged the Commissioner's denial before an Administrative Law Judge ("ALJ") who conducted two telephonic hearings and later affirmed the Commissioner's denial. *Id.* at 42. After the Social Security Appeals Council ("AC") denied further administrative review, she filed this civil action seeking judicial review under 42 U.S.C. § 405(g). ECF No. 1 at 1; *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) ("[T]he Commissioner's decision does not become final until after the [AC] makes its decision denying the claimant's request for review."). Caulder claims that she is disabled and thus entitled to WIB and SSI. ECF No. 1.

## II.  STANDARD OF REVIEW

Titles II and XVI of the SSA govern the WIB and SSI programs, respectively. *See* 42 U.S.C. §§ 401-434, 1381-1383f. Claimants seeking benefits under either program must prove that they are "disabled" within the meaning of the SSA. *See Hollis v. Bowen*, 837 F.2d 1378, 1382 n.3 (5th Cir. 1988) (stating the "relevant law and regulations governing the determination of disability under a claim for [WIB] are identical to those governing the determination under a claim for [SSI]"). A person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord id.* § 1382c(a)(3)(A). To determine whether a claimant is disabled and thus entitled to benefits, the Commissioner employs a sequential five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a).

First, the claimant must not be presently doing any substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "Substantial gainful activity" is work that "involves doing significant physical or mental activities" for pay or profit. *Id.* §§ 404.1572, 416.972. Second, the claimant must have a severe impairment or combination of impairments. *Id.* §§ 404.1520(a)(4)(ii),

416.920(a)(4)(ii). Third, disability exists if the impairment or combination of impairments meets or equals an impairment in the federal regulatory list. *See id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (referencing 20 C.F.R. pt. 404, subpt. P, app. 1).

Before proceeding to steps four and five, the Commissioner assesses the claimant's residual functional capacity ("RFC") and considers her past relevant work ("PRW"). *See id.* §§ 404.1520(a)(4), (e)-(f), 416.920(a)(4), (e)-(f). RFC means "the most [a claimant] can still do despite [her] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). PRW means work the claimant has done "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* §§ 404.1560(b)(1), 416.960(b)(1). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to her PRW considering her RFC. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Fifth, the impairment must prevent the claimant from doing any other relevant work, considering the claimant's RFC, age, work experience, and education. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing that she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

Judicial review is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence in the record supports the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis,* 837 F.2d at 1382. "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley v.*

*Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* (quoting same). The Court may neither reweigh evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Harris,* 209 F.3d at 417; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (alteration in original) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

## III.   ANALYSIS

The Commissioner, acting through the ALJ, completed the five-step evaluation process here. *See* Tr. 28-42. First, the ALJ found that Caulder had not engaged in substantial gainful activity since January 18, 2019. *Id.* at 30. Second, she found four medically determinable impairments: asymptomatic HIV, chronic bronchitis, neurocognitive disorder, and asthma. *Id*. The ALJ found Caulder's claimed multiple sclerosis to be inconsistent with any medical diagnosis or opinion in the record and found her other alleged conditions to be nonsevere. *Id*. Third, she identified no impairment or combination of impairments that qualify under the federal regulatory list. *Id*. at 31. The ALJ then assessed Caulder's RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the [RFC] to perform medium work as defined in 20 C.F.R. 404.1567(c) and 416.917(c) except claimant must avoid all exposure to extreme cold temperatures, wetness, humidity, and environmental irritants such as odors, fumes, dusts, and gases. The claimant is able to perform simple, routine, and repetitive tasks that are free of production rate pace.

*Id.* at 33. After determining Caulder's RFC, the ALJ determined at step four that she had no PRW. *Id.* at 40. At step five, the ALJ found that Caulder's age (closely approaching retirement age), education, work experience, and RFC still allowed her to perform the requirements of jobs that exist in the national economy. *Id.* at 41. The ALJ found Caulder "not disabled" under Sections 216(i) and 223(d) of the SSA. *Id*. at 22.

Caulder argues that the ALJ made two errors that warrant reversal. ECF No. 12 at 2. First, she asserts that the ALJ accepted the opinion of the SSA's physical consultative examiner, Dr. Hester ("Dr. Hester"), but failed to include his functional limitations in her RFC. *Id.* Second, she claims that the ALJ did not account for those same limitations in her hypothetical questions to the vocational expert ("VE"), failing to meet her step five burden. *Id.* The Commissioner responds that substantial evidence in the record supports the limitations that the ALJ incorporated into her RFC finding and that the finding and hypothetical questions are also consistent with the medical opinions in the record. ECF No. 13 at 2-10.

> **A.  The ALJ did not err by omitting Dr. Hester's exact limitations of Caulder's physical capabilities in the RFC.**

An RFC determination is valid if substantial evidence supports it. Because "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision," the Court must look to the presence of credible evidentiary choices and medical findings at each stage of the ALJ's analysis. *Boyd*, 239 F.3d at 704. Caulder argues that the ALJ's consideration of and acquiescence to Dr. Hester's opinion should have resulted in a verbatim recitation of Caulder's functional limitations in the RFC. ECF No. 12 at 2-3. However, Caulder overstates the ALJ's duty. The Court's role is not to second guess the ALJ's analysis, but to ensure that substantial evidence supports her decision. In her first hearing, the ALJ ordered a consultation with an examiner, Dr. Hester. Tr. 69. Two state agency medical consultants

("SAMCs") also reviewed Caulder's file. *Id.* at 92-122. The ALJ mostly agreed with Dr. Hester's report with the exception of "occasional posture limitations as related to difficulty squatting." *Id.* at 40. Caulder argues that the ALJ erred by not including some non-postural limitations (carrying, walking, and using a crane) from Dr. Hester's report into the RFC. ECF No. 12 at 2.

In assessing Caulder's work-related capabilities, the ALJ discussed at length that she could "lift and/or carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk for a total of about six hours in an eight-hour workday; sit for a total of about six hours in an eight-hour workday; and [had] unlimited pushing and/or pulling." Tr. 39. She also noted that Caulder could "walk to the store," "sweep the floors," and concerning ambulation, "the claimant demonstrated a steady and symmetric gait; she did not come with an assistive device or prosthetic." *Id.* at 36. The ALJ explained her analysis at each step demonstrating that substantial evidence supported her decision. *Id.* at 33-40. The nature of Caulder's activities during the relevant timeframe support the ALJ's determination that, although her ailments may limit her, she was not disabled pursuant to the SSA regulations. *See id.* at 40.

Although the ALJ's findings slightly contradict Dr. Hester's opinion, the ALJ was not required to describe why she did not include each limitation in her RFC analysis. The ALJ's assessment of a plaintiff's limitation, comes at step two, not in the RFC assessment. *See* Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1, 3–5 (S.S.A. July 2, 1996); *see also* 20 C.F.R. § 404.1545(a)(1) (RFC is not an assessment of an individual's physical impairments, but what an individual can do despite his limitations or restrictions). The RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8, 1996 WL 374184, at *1. The analysis of limitations at steps two and three merely provides substantial evidence for the later RFC analysis, as one has to

6

do with impairments and the other with function. *Bauer v. Berryhill,* No. 7:17-cv-00128-M-BP, 2018 WL 3999687, at *7 (N.D. Tex. July 27, 2018), *rec. adopted*, 2018 WL 3993812 (N.D. Tex. Aug. 21, 2018).

Nevertheless, Caulder argues that the ALJ should have assessed and discussed why she did not include each of Dr. Hester's limitations in her RFC analysis. ECF No. 12 at 2-3. Again, Caulder's argument is not persuasive. Physical limitations listed in the RFC merely aid the ALJ in developing the broad categories found in the subsequent analysis. Thus, in the RFC portion, the ALJ need only articulate the persuasiveness of the medical opinions in the claimant's record. 20 C.F.R. § 404.1520c(b); *Guy v. Comm'r of Soc. Sec.*, No. 4:20-cv-01122-O-BP, 2022 WL 1008039, at *3 (N.D. Tex. Mar. 14, 2022), *rec. adopted* 2022 WL 1004241 (N.D. Tex. Apr. 4, 2022).

The ALJ stated in the RFC how persuasive she found Dr. Hester's opinion and provided her reasoning behind this determination**.** Tr. 39-40. The ALJ remarked that the majority of Dr. Hester's opinion and assessment were persuasive as generally consistent with findings throughout the record, but found that "the occasional postural limitations as related to difficulty squatting as demonstrated on one single examination" … [were] "unpersuasive as unsupported by the overall longitudinal record as a whole." *Id.* The ALJ then relied only in part on Dr. Hester's RFC assessment recommendation to reach her conclusion. *Id*. This analysis of the medical opinions was all that was needed in the RFC analysis portion of the ALJ's decision. *Guy v. Comm'r of Soc. Sec.*, 2022 WL 1008039, at *3. The ALJ's mention of the physical limitations in Dr. Hester's opinion in the RFC analysis, in the context of a complete evaluation of all the information in the record, does not require a more detailed discussion of those limitations in the RFC.

The ALJ considered Dr. Hester's opinion and balanced its relative persuasiveness against other evidence in the record, including the SAMCs' reports and Caulder's testimony. Tr. 36, 39,

40. Where she disagreed with Dr. Hester, she explained why and how the SAMCs' reports were more consistent with the rest of the medical evidence. *Id.* Relying on the medical reports in toto, she then determined the RFC accordingly. *Id.* at 38-40. This approach ensures no single piece of evidence controls over and against the rest of the evidentiary record and aligns with the methodology outlined in 20 C.F.R. § 404.1520(c). Throughout the ten pages of her Findings of Fact & Conclusions of Law, the ALJ consistently described the evidence presented, her interpretation of that evidence, and her analysis of Caulder's claim considering that evidence. *See* ECF No. 8-1 at 30-40. After reviewing the entire evidentiary record, including Dr. Hester's opinion, the ALJ noted that:

> It is found that [RFC] assessment is supported by the claimant's generally intact physical examination and clinical findings. Functional deficits related to the combination of the claimant's complaints are accommodated with the stated exertional and environmental limitations. The combined effects of the claimant's impairments as reflected in persistent reports of pain support a finding that the claimant is limited to a reduced medium exertional level as outlined…. In short, the evidence shows the claimant's impairments could preclude her from performing very heavy, and heavy exertional work activity. However, the evidence of record in its entirety supports the finding that the claimant is able to perform a side range of medium unskilled work as described in the [RFC].

Tr. 40. The ALJ did not err in not explaining why she rejected some of Dr. Hester's limitations in the RFC with which the SAMCs' findings disagreed. Moreover, because "[c]onflicts in the evidence are for the Commissioner and not the courts to resolve," the Court will not second guess the ALJ's determination that certain other medical evidence in the record was more persuasive than Dr. Hester's opinion. *See Brown*, 192 F.3d at 496. Reversal is not warranted on this point.

### B. The ALJ properly accounted for Caulder's physical limitations in her hypothetical questions to the VE.

Although Caulder challenges the ALJ's formulation of the hypothetical questions, "[t]he hypothetical question that an ALJ poses to a VE need only incorporate the disabilities that the ALJ recognizes." *Gardner v. Massanari*, 264 F.3d 1140 (5th Cir. 2001). The hypothetical questions here were not defective because they did incorporate the physical limitations that the ALJ identified. Tr. 91-95. When the ALJ asked the VE about potential jobs that Caulder could perform, the ALJ included a limitation "to perform work in the medium range…" and asked about limitations consistent with the medical records, occasionally "lifting and carrying fifty pounds, and frequently twenty-five pounds…and walk for six hours, sit for six hours." *Id.* at 92-93. The ALJ acknowledged the SAMCs' findings regarding Caulder's functional limitations. *Id.* at 44-45. It was within the ALJ's purview to concur with other medical opinions instead of relying solely on Dr. Hester's notes when questioning the VE. *See Webster v. Kijakazi,* 19 F.4th 715, 718-19 (5th Cir. 2021) (citing 20 C.F.R. § 404.1520(c)). Further, Caulder's argument that the VE's testimony conflicts with the *Dictionary of Occupational Titles* ("DOT") and is therefore defective, has no merit. ECF No. 12 at 6-7. Courts have held that the ability to perform simple and routine tasks are consistent with jobs that the VE stated were appropriate for someone with Caulder's reasoning levels. *See Smith v. Colvin,* No. 313-cv-1884-N-BN, WL 1407437 at *4 (N. D. Tex. Mar. 2014) *rec. adopted* 2014 WL 1407440 (N.D. Tex. Apr. 11, 2014).

Additionally, even if the hypothetical questions were defective, Caulder waived her right to complain by not suggesting a reformulation at the administrative hearing. If a hypothetical question "omits a recognized limitation and the 'claimant or her representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the [VE] any purported defects in the hypothetical questions,' there is no reversible error." *Id*. (quoting

*Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994)). Caulder's representative had a fair opportunity to correct any deficiencies in the ALJ's hypotheticals or the VE's testimony and declined to do so, in Caulder's second hearing. Tr. 94-95. Thus, even if the ALJ failed to adequately assess Caulder's functional limitations in her questions to the VE, which she did not, that error would be harmless. *See Carey v. Apfel,* 230 F.3d 131, 146–47 (5th Cir. 2000). (Claimants cannot scan the record for implied conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT and then present these apparent conflicts as reversible error, at least when as here the claimant's counsel did not explore the supposed conflicts when cross-examining the vocational expert).

The ALJ did not err in the hypothetical questions that she asked the VE because she properly incorporated the disabilities that were consistent with substantial evidence in the medical record into the questions. Reversal is not required on this point.

### IV.    CONCLUSION

Because substantial evidence in the record supported the Commissioner's decision and the Commissioner employed the proper legal standards, the undersigned **RECOMMENDS** that Judge O'Connor **AFFIRM** the Commissioner's decision and **DISMISS** this case with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates

by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on May 23, 2023.

                                                  Hal R. Ray, Jr.
                                                  UNITED STATES MAGISTRATE JUDGE